## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 07-27 (RBW)** |
| | : | |
| **ALLEN LOVE** | : | |
| | : | |
| **Defendant.** | : | |

---

### MEMORANDUM IN AID OF SENTENCING

Defendant Allen Love, through counsel, respectfully submits the following Memorandum in aid of his sentencing.

1.     On December 7, 2007, Allen Love will come before this Court to be sentenced pursuant to his guilty plea to Transporting or Shipping Material Involving Child Pornography, in violation of 18 U.S.C § 2252A(a)(1).  According to the Pre-Sentence Report (PSR) prepared by the United States Probation Office, Mr. Love has no criminal history points and, therefore, falls in Criminal History Category I under the United States Sentencing Guidelines.  The PSR also states that Mr. Love's Total Offense Level under the Sentencing Guideline is level 39 and that his sentencing guideline range is 262-327 months.

2.     While Mr. Love agrees that he falls in Criminal History Category I under the sentencing guidelines, he stringently objects to the PSR writer's Offense Level calculations.  Specifically, Mr. Love objects to the seven level enhancement contained in the PSR based on the notion that Mr. Love distributed material involving the sexual exploitation of a minor with the intent to "persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited

sexual conduct."[1]  When reviewing the facts of this case, it is clear that an enhancement under U.S.S.G. § 2G2.2(b)(3)(E) is inapplicable.  With this correction, Mr. Love's proper Total Offense Level is 34[2] and his sentencing guideline range is 151-188 months.

3.       In this Memorandum, due largely to Mr. Love's background and his early acceptance of responsibility, counsel for Mr. Love argues that a sentence of 84 months is an appropriate resolution of this case.

## ARGUMENT

## I.       THE POST-__BOOKER__ SENTENCING FRAMEWORK.

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)."  United States v. Booker, 125 S.Ct. 738 (2005).  While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Pursuant to Booker, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in Booker – sentencing courts should consider the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect

---

[1]See U.S.S.G. §2G2.2(b)(3)(E).

[2]As the PSR writer correctly notes in his response to defense counsel's objection to paragraph 31 of the draft PSR, a two level enhancement still applies because the offense involves some distribution of child pornographic material.  Therefore, the proper total offense level is 34 rather than 32.

for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

and

(D) to provide the defendant with the needed educational and

vocational training, medical care, or other correctional

treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title

18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After <u>Booker</u>, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

**II.     A SEVEN LEVEL ENHANCEMENT UNDER U.S.S.G. § 2G2.2(b)(3)(E) IS UNWARRANTED IN THIS CASE.**

The PSR writer is the only party in this matter taking the position that a seven level enhancement applies in this case based on the theory that Mr. Love distributed material involving the sexual exploitation of a minor with the intent to "persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct." <u>See</u> U.S.S.G. 2G2.2(b)(3)(E). The defense vehemently opposes the application of this enhancement and the government is not seeking this severe upward adjustment. When reviewing the PSR writer's basis for this enhancement, it is clear that his analysis is seriously flawed and that the enhancement is completely without merit.

U.S.S.G § 2G2.2(b)(3)(E) provides that a seven level enhancement applies to offenses regarding material involving the sexual exploitation of a minor "[i]f the offense involved . . . [d]istribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct." Critically, in order for this adjustment to apply, the plain language of the enhancement requires that distribution of the improper material must be "to a minor" and that the material must have been distributed by the defendant with the intent "to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual

conduct." Here, Mr. Love only distributed child pornographic material to an adult law enforcement officer who was posing as an adult over the internet. Therefore, Mr. Love neither distributed any of the material to a child nor did he distribute any of the material to someone who he believed to be a child. Because the sentencing guidelines define "distribution to a minor" as "the knowing distribution to an individual who is a minor at the time of the offense," the seven level enhancement cannot apply in this case. See U.S.S.G. § 2G2.2. Application Note 1 (definitions).[3]

In an attempt to justify the seven level enhancement, the PSR writer makes references to the text of internet chatting which occurred between Mr. Love and the undercover officer involved in this case. Although the chat referenced by the PSR writer indicates that Mr. Love expressed a sexual interest in the undercover officer's fictitious daughter, the chat shows that Mr. Love communicated only with the undercover officer and that all material sent by Mr. Love was sent directly to the undercover officer. The chat further reveals that the only mention of any material being shown to the officer's fictitious daughter were comments made by the undercover officer. When reviewing the chat between Mr. Love and the undercover officer, the text clearly shows that Mr. Love never expresses any desire that any of the material he distributed be shown to the undercover officer's fictitious daughter. The chat also clearly shows that Mr. Love never made any request of the undercover officer to show any material to the fictitious daughter.

Moreover, there is no evidence that either Mr. Love or even the undercover officer ever made

---

[3]The sentencing guidelines define a "minor" as "(A) an individual who had not attained the age of 18 years; (B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years." U.S.S.G. § 2G2.2. Application Note 1 (definitions).

any mention that any material involved in this case was distributed to anyone for the purpose of persuading, inducing, enticing, coercing or facilitating the travel of any minor to engage in prohibited sexual conduct. Without such evidence, the PSR writer resorts to relying on his theory that Mr. Love's chat "exhibits his intention to 'groom' the intended victim" in order to support his position that an enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(E) is applicable. See PSR at 20. Considering that the PSR writer is unable to provide any credible factual support for his theory and because Mr. Love did not distribute any material to a minor, the PSR writer's argument for a seven level enhancement is completely without merit.

In an effort to provide legal support for his position, the PSR writer makes reference to three cases in his response to Mr. Love's objections to the PSR.[4] When addressing the issue of the applicability of an enhancement for conduct involving the enticement of minors to travel for unlawful sexual purposes, the three cases relied upon by the PSR writer focus on an issue which is not present in Mr. Love's case. The cases cited by the PSR writer do not support his argument for an enhancement under U.S.S.G. § 2G2.2(b)(3)(E) because they do not indicate that the facts of each individual case support a finding that the defendant engaged in conduct which can be described as enticing minors to travel for unlawful sexual purposes. In one case, United States v. Canada, the court does not even address the factual findings of the trial court because the defendant is not challenging the trial court's factual findings regarding whether he distributed material in order to entice a minor to have sex. See Canada at 263.

---

[4]The cases cited by the PSR writer are United States v. Fowler, 216 F.3d 459 (5th Cir. 2000), United States v. Canada, 110 F.3d 260 (5th Cir. 1997) and United States v. Garrett, 190 F.3d 1220 (11th Cir. 1999).

When reviewing the cases cited by the PSR writer it is evident that these cases actually offer support for Mr. Love's position that a seven level enhancement under U.S.S.G. § 2G2.2(b)(3)(E) is unwarranted. In all three cases cited by the PSR writer, the defendant distributed pornographic material to a person the defendant believed was a minor. Also, in all three cases, the person to whom the defendant distributed the material in question was the person with whom the defendant was seeking to have sexual relations. The facts present in these cases further show that the defendants clearly distributed material as a means to entice fictitious minors to engage in sex with them. Because Mr. Love did not distribute any of the materials in question to a person he believed to be a minor and because there is no credible evidence that Mr. Love distributed any materials to entice a minor to travel for unlawful sexual purposes, the cases cited by the PSR writer are clearly distinguishable.

United States v. Maneri, 353 F.3d 165 (2d Cir. 2003), offers an example of the type of cases in which an enhancement of the sort which is in dispute here is applicable. In Maneri, the issue in dispute was whether an enhancement "for the distribution of child pornography for the receipt, or the expectation of receipt, of a thing of value" was warranted. Maneri at 166.[5] In Maneri, the defendant was communicating in an internet chat room directly with an undercover officer who was posing as a thirteen year old girl. Maneri at 166-167. Transcripts of the chat reveal that, on several separate occasions, the defendant discussed pornographic material with the fictitious minor and he discussed his desire to have sex with the fictitious minor. The defendant had multiple discussions

---

[5]The enhancement at issue in this case was based on U.S.S.G. § 2G2.2(b)(2)(B) which required a five level upward adjustment at the time of defendant's November 13, 2002 sentencing.

regarding meeting the fictitious minor and he discussed sexual acts in which he planned to engage with the fictitious minor. <u>Maneri</u> at 167. The defendant even invited the fictitious minor "to his home to watch pornographic movies and promised to perform oral sex on her while she watched the movies." <u>Id.</u>. After many such discussions, the defendant sent electronic files to the fictitious minor which contained images of sexual activity involving minors. <u>Id.</u>. Based on these facts, the court in <u>Maneri</u> held that the defendant's conduct justified a five level enhancement for distributing child pornography for a thing of value.

As with the cases relied upon by the PSR writer, <u>Maneri</u> involves a defendant who communicated directly with an individual who the defendant believed to be a minor and the child pornographic material sent by the defendant was sent specifically to the fictitious minor. <u>Maneri</u> also involves a case where the facts credibly show that the defendant's purpose for sending child pornography was to persuade, induce, entice, coerce, or facilitate the travel of the fictitious minor with whom he was communicating to engage in prohibited sexual conduct.

Mr. Love's case is very much unlike the cases relied upon by the PSR writer or any other case which supports an enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(E). Because Mr. Love neither distributed any material to a "minor" nor distributed any material with the intent "to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct," an upward adjustment under U.S.S.G. § 2G2.2(b)(3)(E) is inapplicable.

### III.   A SENTENCE OF 84 MONTHS IS A REASONABLE SENTENCE IN THIS CASE.

#### A.   Background.

As a result of Mr. Love's conviction in the instant case, he will be sentenced in this matter

on December 7, 2007.  Significantly, The PSR indicates that Mr. Love has no sentencing guideline criminal history points and that he has never previously been sentenced to a period of incarceration for a criminal offense.  Therefore, when Mr. Love faces sentencing on December 7, it will be an extremely unusual and stressful event for him.  Mr. Love's overall background shows that he is generally a hard working individual who has impressively shown unselfish devotion to his mother.

Mr. Love was born in the state of Illinois in 1955 and he was raised in a household which included both parents.  PSR, ¶¶ 50 & 51.  Mr. Love's household also included six siblings[6] and he describes his childhood as "normal."  PSR, ¶ 51.  Mr. Love was able to graduate highschool in Freeport, Illinois and he enlisted in the United States Army in 1978.  PSR, ¶¶ 63 & 66.  While in the Army, Mr. Love married in the state of Colorado and he had one daughter with his wife.  PSR, ¶ 52.  Unfortunately, this marriage did not last and Mr. Love became divorced in 1981 due to "irreconcilable differences."  Id.  During this same year, Mr. Love discontinued his service in the United States Army and he was honorably discharge.  PSR, ¶ .66.

After his career in the Army, Mr. Love began working for various employers for twenty one consecutive years and he furthered his education by attending community college.  Mr. Love's work history included employment in the Thermos Company factory in Freeport, Illinois from 1985 to 1996.  PSR, ¶ 69.  Mr. Love also worked as a truck driver for multiple trucking companies in Illinois from 1996 to 2006.   PSR, ¶ 68.  While working as a truck driver, Mr. Love attended Highland Community College in Freeport, Illinois.   PSR, ¶ 64.  Mr. Love discontinued his enrollment at Highland Community College in 2004 when he was only two classes away from receiving a

---

[6]Mr. Love had a seventh sibling, but he did not grow up with this sibling because she died while she was an infant.  PSR, ¶ 50.

certificate as a computer technician.  Id.

The last few years of Mr. Love's life have been tragic.  Mr. Love's last surviving sister passed away about five or six years ago and his daughter passed away about four years ago.  PSR, ¶¶ 50 & 52.  Additionally, two of Mr. Love's brothers died within the last three years and his father passed only last year as a result of cancer.  PSR, ¶¶ 50 & 51.  Mr. Love's mother, who was "confined to oxygen tanks," had no one to care for her after the passing of Mr. Love's father.  PSR, ¶¶ 55.  In order to assist his mother, Mr. Love resigned from his employment as a truck driver to care for her full time.[7]  PSR, ¶¶ 55 & 68.  It was during this tragic time period for Mr. Love and while he was home caring for his ailing mother that Mr. Love became involved in the instant offense.

As early as when law enforcement officers initially searched Mr. Love's residence in connection with this case, Mr. Love began demonstrating his willingness to accept responsibility and assist law enforcement.  Based on discovery the government has provided to undersigned counsel, on the day of the search, Mr. Love voluntarily provided law enforcement officers details concerning his involvement with child pornography.  Mr. Love admitted that he has distributed child pornographic images via the internet and he provided law enforcement with information concerning where in his home such images could be found.  Mr. Love also advised the officers of the various e-mail addresses he has and how he uses each particular address.  Mr. Love even provided the officers with written consent to search a shed located in the backyard and a minivan which was registered to his mother.  Additionally, Mr. Love immediately began assisting law enforcement in the possible prosecution of others involved in child pornography.  The government's discovery

---

[7]While incarcerated in this case, Mr. Love's mother was diagnosed with having liver and spleen cancer.  She ultimately died of cancer only about two months ago.

reveals that Mr. Love provided consent to allow law enforcement officers to assume his online identities with respect to two e-mail accounts to assist the officers in investigating the potential illegal activities of others. Mr. Love continued to display his acceptance of responsibility by entering a guilty plea in this case and by informing the PSR writer after his guilty plea that he acknowledges having participated in the conduct outlined in the factual proffer in support of the plea. PSR, ¶ 26.


**B.      18 U.S.C. § 3553(a) Factors.**

A sentence of 84 months will more than adequately reflect the seriousness of Mr. Love's offense. See 18 U.S.C. § 3553(a)(2)(A). Mr. Love's offense is a non-violent offense and, although Mr. Love has made statements expressing a sexual interest in children, there is no credible evidence that Mr. Love ever had any inappropriate contact with children. Therefore, a sentence of 84 months will adequately reflect the seriousness of Mr. Love's offense. For these reasons, a sentence of 84 months is more than necessary for purposes of promoting respect for the law and with providing just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

A sentence of 84 months is also more than enough incarceration to provide ample deterrence for Mr. Love and anyone else who may consider committing a similar crime. See 18 U.S.C. § 3553(a)(2)(B). A seven years sentence is significant punishment and such a sentence will surely send a message to Mr. Love and anyone else that crimes involving child pornography will not be tolerated and that the penalty for the commission of such crimes is hefty. Additionally, an 84 months sentence includes a period of supervised release and sex offender registration requirements which will undoubtedly have a significant long term impact on the quality of Mr. Love's life.

When considering Mr. Love's limited criminal history, his hard work and his early

willingness to accept responsibility, it is clear that Mr. Love will not commit any further crimes in the future. Therefore, a sentence of 84 months will adequately protect the community from any further crimes on the part of Mr. Love. 18 U.S.C. § 3553(a)(2)(C).

Finally, when considering the nature and circumstances of the offense along with the history and characteristics of Mr. Love,[8] a sentence of 84 months is warranted. Mr. Love has a limited criminal history and has lead a generally hard working life. Mr. Love earned his highschool diploma and he has taken college courses. Mr. Love has also worked for about 21 consecutive years and he only discontinued work recently to unselfishly care for his ailing mother. When Mr. Love's residence was being searched in this case, he quickly accepted responsibility and immediately began assisting law enforcement in their investigations against other potential offenders. Mr. Love has learned a serious lesson from his mistake and he is dedicated to not getting involved in criminal conduct again. Therefore, this Court should not impose a sentence which is greater than 84 months in this case.

### C.    Conclusion.

For the reasons discussed above, the PSR writer's request for a seven level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(E) must be denied. Additionally, a sentence of more than 84 months will be greater than necessary to satisfy the statutory purposes of sentencing. See 18 U.S.C. § 3553(a). A sentence of no more than 84 months is a just and fair sentence in this case. Therefore, Mr. Love respectfully requests that this court impose a sentence in this case which is not greater 84 months.

---

[8]See 18 U.S.C. § 3553(a)(1).

12

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
TONY W. MILES
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500